## In re Commercial Trust Company. No. 1

*Mark T. Milnor* and *Thomas R. Wickersham*, for Secretary of Banking.

UTTLEY, P. J., fifty-eighth judicial district, specially presiding, January 3, 1933.—The petition in this case is presented under The Banking Act of June 15, 1923, P. L. 809, concerning the liquidation of closed banks and trust companies. Section 40 of this act deals with the taking possession and liquidation of the funds, property and investments held by closed trust companies in any fiduciary capacity, and so much of this section as applies to this proceeding reads as follows:

"Section 40. Trust Funds—

" (a) . . . Whenever the secretary takes possession of the business and property of a corporation or person in accordance with the provisions of this act, he shall also take possession of all funds, property, and investments held by such corporation or person in any fiduciary capacity, but shall keep the same separate and apart from the assets thereof.

" (b) . . . Upon determining to liquidate the affairs of such corporation or person, the secretary shall forthwith give written notice to all parties interested in any such funds, property, or investments held in a fiduciary capacity, so far as such notice is practicable, requiring them within thirty days to apply to the

proper court or official for the appointment of substituted fiduciaries to take the place of such corporation or person. On the failure or neglect of the parties so notified to make such application within the time designated, or in case the parties in interest can not'be notified, the secretary shall himself apply for such appointment of substituted fiduciaries."

Notice of the time and place of hearing, on the petition of the Secretary of Banking, in this proceeding was mailed to all of the holders of said mortgage fund certificates, on May 7, 1932. No person appeared of record except Mark T. Milnor, Esq., and Thomas R. Wickersham, Esq., who represented and conducted the proceeding for the Secretary of Banking.

The sole question to be determined by the court here is whether the mortgages designated by the counsel and witnesses as a mortgage pool or mortgage fund, were held by Commercial Trust Company in a fiduciary capacity. For unless this was the case the court is without power to appoint a substituted trustee as prayed for.

When the Secretary of Banking took over Commercial Trust Company on October 15, 1931, there were among the assets of this institution, first mortgages on real estate to the face value of $472,364.20, from various persons to Commercial Trust Company as mortgagee. Against these mortgages, designated by the counsel and witnesses as a mortgage pool or mortgage fund, this institution had issued, prior to October 15, 1931, what are designated as 5 percent mortgage fund certificates, aggregating in face value $461,900. These certificates, differing only in denomination, were issued by Commercial Trust Company to the various holders thereof for cash, the trust company therein guaranteeing the payment of the principal represented by said certificates with interest thereon at the rate of 5 percent, payable semiannually. The certificates above mentioned with the interest coupons thereto attached were in the following form:

"No. E 348                                                                $500.00

"COMMERCIAL TRUST COMPANY
"OF HARRISBURG, PA.
"5% MORTGAGE FUND CERTIFICATE

"THIS CERTIFIES THAT,..........................................
on.....................deposited with this Company, $500.00 to be held with other monies received upon similar certificates, as a Mortgage Fund, and receive 5% per annum, payable January 1st and July 1st. The Funds to be invested in first mortgages on Real Estate.

"THIS CERTIFICATE is transferable only on the books of the Company, and after one year from date is payable at the option of the Company at any regular interest paying period on sixty days notice.

The Commercial Trust Company hereby guarantees the payment of this Certificate and interest in full.

"COMMERCIAL TRUST COMPANY
"of Harrisburg, Pa.

"ATTEST:

............................................
"President

............................................
"Secretary

"Six Months Interest Due and Payable on Maturity of This Certificate $12.50

"On the first day of...............................the Commercial Trust Company of Harrisburg, Pa., will pay to bearer at its office in Harrisburg,

Pa., $12.50 being six months interest at five percent per annum, then due on its Mortgage.

"FUND CERTIFICATE NO. E 348."

The difference of $10,464.20 between the aggregate face value of the mortgages in this fund or pool and the aggregate face value of the certificates issued against the same represented the equity of the trust company in these mortgages. On May 2, 1932, the pool included $3,695.51 of cash, representing collections on account of principal made by the Secretary of Banking, who also on that date had received $2,226.21 interest on these mortgages, which was not yet distributed to the certificate holders.

The loans on these mortgages were made out of the general funds of the trust company, and when the mortgage fund certificates were sold from time to time the proceeds thereof went into the general funds, that is, the commercial side of the trust company, to replace the money loaned therefrom on the mortgages. These mortgages were kept in a separate account, but were carried as one item marked "Mortgages", on the asset side of the ledger; in the general books of the company, and there was no record of them in the books of the trust department. They were not earmarked in any way except as first mortgages and to the extent that they were kept in a separate account. The company had an individual mortgage ledger, in which the first mortgages and second mortgages were marked as such respectively and the first mortgages kept in yellow envelopes and the second mortgages in green envelopes. The officers of the company testify that they knew all the first mortgages of the company constituted this mortgage pool and were security for these mortgage fund certificates, because the certificates were always sold against the entire bulk of first mortgages, which was indicated by the words, "The funds to be invested in first mortgages on real estate", contained in the certificates.

On the books and balance sheets of the company the mortgages were carried, as one item, among the general assets, and the certificates outstanding were shown as liabilities.

From these facts the court is asked to find that these mortgages were held in a fiduciary capacity for the benefit of the holders of the mortgage fund certificates above mentioned.

The relation of this institution to these mortgages, to make it the holder thereof in a fiduciary relation, must amount to an express, technical, and continuing trust. Mr. Justice Simpson, speaking for the Supreme Court in Cameron v. Carnegie Trust Company, 292 Pa. 114, 117, 118, said that "the proper procedure on questions affecting a distribution of the funds collected by the secretary, is to present a claim when his account has been filed and is before the court, at which time all the distributees can be heard, and from the decree which follows they alone have the right to appeal. . . . Section 40 of the Banking Act of June 15, 1923, P. L. 809, 827, relied on to sustain the course pursued here, obviously refers only to technical and continuing trusts, for it prescribes that substituted fiduciaries shall be appointed, in place of the insolvent banking institution, to take over and thereafter administer the trust. This is the only section of the act which provides for a preliminary determination regarding any claim on the funds in the hands of the secretary, and hence,—expressio unius est exclusio alterius,—excludes the idea of a right to so proceed in any other instance."

This construction of section 40 of the Act of 1923 is cited with approval in the case of Woodward's Petition, 307 Pa. 485, 486, and also in Cameron, Secretary of Banking, v. Bankers Trust Company, 14 D. & C. 715.

In Danzig & Romain v. Aldine Trust Company et al., 15 D. & C. 231, 234, in commenting on the case of Cameron v. Carnegie Trust Co., supra, Judge Smith in his opinion says: "A reading of that decision shows that the only matters permitting of a preliminary determination are matters of technical and continuing trusts, and only then when such determination is sought by the claimant with the consent of the Secretary of Banking."

The wording of these certificates and the way they were set up on the books and balance sheets as general liabilities of the company and the relation of the company to these mortgages as shown by the way they were carried as general assets, in the commercial department of the company, without any earmark or distinction of any kind, was certainly inconsistent with the existence of a technical and continuing trust.

The payment in full of the principal and interest was therein guaranteed by the trust company and the interest was payable July 1st and January 1st, regardless of whether the interest was paid on the mortgages or not.

As was said by Judge Lamberton in In re Manayunk Trust Company, 17 D. & C. 19, "We cannot, at this time, determine whether the relation is that of banker and depositor, secured creditor and debtor, [or] trustee and cestui que trust under a trust ex maleficio."

To appoint a substituted trustee now, therefore, would remove these mortgages from the jurisdiction of the Secretary of Banking, who represents the interests of all parties and transfer them to a trustee who would be responsible alone to the holders of the certificates. The other depositors have a vital interest in this question. They were not before the court or represented by counsel in this proceeding, and such right is protected and provided for in the Act of 1923.

Creditors of an insolvent trust company must present their claims at the audit of the account filed by the Secretary of Banking in possession, when all parties in interest can be heard and the nature of the claims determined and the claims allowed or refused. A claim for preference in payment is premature if filed before the secretary's account and will be dismissed without prejudice. Cameron v. Bankers Trust Co., 14 D. & C. 715.

We are not attempting here to determine or give any opinion on the legal or equitable rights of the holders of these certificates in the mortgages constituting this pool or fund. Those rights will have to be settled and determined after the Secretary of Banking has filed his account, at the audit thereof before the court. We are only concerned with the power of the court to appoint a substituted trustee.

We are of the opinion, that the relation of Commercial Trust Company to these mortgages and the holders of these certificates is not such as to make said company the holder of these mortgages in fiduciary capacity and to constitute an express, technical and continuing trust, and that therefore the petition of the Secretary of Banking for the appointment of a substituted trustee must be dismissed.

### Decree

Now, January 3, 1933, the petition of William D. Gordon, Secretary of Banking of the Commonwealth of Pennsylvania, in possession of the business and property of the Commercial Trust Company, for the appointment of a substituted trustee for the mortgage pool or fund in the above case is hereby dismissed at the cost of the petitioner. To this opinion and decree Mark T. Milnor, Esq., and Thomas R. Wickersham Esq., attorneys for petitioner, except, and a bill of exceptions is hereby sealed for the petitioner.

From Homer L. Kreider, Harrisburg, Pa.